IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY HUMENIK, | ) | Case No. 1:24-cv-00636 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | REUBEN J. SHEPERD |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

**I.      Introduction**

Plaintiff, Anthony Humenik ("Humenik"), seeks judicial review of the final decision of the Commissioner of Social Security, denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). I find the Administrative Law Judge ("ALJ") did not apply proper legal standards and vacate and remand the Commissioner's final decision denying Humenik's DIB and SSI applications.

II.     **Procedural History**

Humenik filed for DIB and SSI on August 19, 2021, alleging a disability onset date of October 31, 2013. (Tr. 313). The claims were denied initially and on reconsideration. (Tr. 228-36, 242-48). He then requested a hearing before an ALJ. (Tr. 251). Humenik (represented by counsel) and a vocational expert ("VE") testified before the ALJ on March 20, 2023. (Tr. 41-43). Humenik amended his alleged disability onset date to January 31, 2018, during the hearing. (Tr. 44-45, 175).

On April 3, 2023, the ALJ issued a written decision finding Humenik not disabled. (Tr. 15-35). The Appeals Council denied his request for review on February 21, 2024, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; see 20 C.F.R. §§ 404.955, 404.981). Humenik timely filed this action on April 9, 2024. (ECF Doc. 1).

III.    **Evidence**

   A.   **Personal, Educational, and Vocational Evidence**

Humenik was 45 years old on the amended alleged onset date, making him a younger individual according to Agency regulations. (*See* Tr. 33). Humenik has an eleventh-grade education and attended special education classes. (*See* Tr. 346, 412-33). In the past, he worked as an electromechanical technician. (*See* Tr. 63).

   B.   **Relevant Medical Evidence**[1]

Humenik was primarily treated by David Kuentz, D.O., whose progress notes, specifically regarding memory issues and cane usage, remained generally unchanged. On January 31, 2018, Dr. Kuentz's progress notes stated that Humenik reported progressive memory

---

[1] The relevant period is from January 31, 2018, Humenik's amended alleged onset of disability. (*See* Tr. 44-45, 175). I therefore focus my review of the medical evidence to that available from that date.

2

problems since 2011. (Tr. 614). Humenik described his memory loss as debilitating, despite taking medication for it. (*Id*.). However, Dr. Kuentz noted that Humenik found his medication helpful and quoted Humenik's statement that his "memory is not as bad." *(Id.)*. Dr. Kuentz also noted that prior neurological evaluations, including lab tests, EEG, and a head CT scan, had been normal and that the head CT scan revealed no source of memory loss. (Tr. 615). Additionally, Dr. Kuentz observed that Humenik repeats himself often, including during the exam. (*Id.*). Dr. Kuentz noted that Humenik stops mid-sentence and forgets what he is speaking about or forgets what he is looking for. (*Id.*). Humenik began taking Cymbalta to address symptoms of depression. (*Id.*). At a follow-up appointment on May 15, 2018, Humenik indicated that Cymbalta had significantly improved his symptoms, though memory issues persisted. (Tr. 621).

On November 6, 2018, Dr. Kuentz documented that Humenik had begun using a cane since their last visit. (Tr. 631). Dr. Kuentz noted that Humenik had lumbar radicular pain and rheumatoid arthritis, causing pain in Humenik's hands, knees, and back. (*Id.*). Memory concerns remained unchanged besides noting that Humenik used his phone as a reminder for medication management. (*Id.*). On November 10, 2018, during a telemedicine visit with Dr. Kuentz, Humenik reported that his family helps him manage medications due to severe short-term memory deficits. (Tr. 700). Humenik was unable to identify which medications he was taking at the time and Dr. Kuentz made a note to follow up with Humenik's family to ensure the medication list is up to date. (*Id.*).

On a visit on October 3, 2019 with Dr. Kuentz, Humenik reported no significant change in his condition. (Tr. 642-43). He continued managing his rheumatoid arthritis with a nonsteroidal anti-inflammatory drug, which provided "good results." (Tr. 643).

3

Throughout telemedicine appointments in 2020 and 2021, Dr. Kuentz documented Humenik's continued use of a cane and adherence to medication for rheumatoid arthritis, depression, and memory loss. (*See, e.g.,* Tr. 443-44, 450-52, 456-58). Dr. Kuentz's notes during these appointments remained generally unchanged, stating that he had progressive memory concerns since 2011, had difficulty reading because of his memory, and would forget what he was speaking about, often repeating himself. (*See id.*). Dr. Kuentz quoted Humenik in his notes saying his "memory is not as bad" but that memory loss remained debilitating. (*See, e.g.,* Tr. 451). Despite normal EEG and lab results, Dr. Kuentz considered adding a second medication to address his memory loss. (Tr. 452).

On January 5, 2022, Humenik underwent a diagnostic evaluation at Ohio Guidestone, where he reported signs of borderline dementia. (Tr. 845). He described blackouts he had experienced, including an incident where he drove somewhere and did not remember how he got there. (Tr. 845-47). He reported difficulty concentrating, frequently "blacking out," and forgetting what he was talking about, which he stated he had experienced for over ten years. (*Id.*). He was diagnosed with generalized anxiety disorder and major depressive disorder. (Tr. 856).

On February 14, 2022, Humenik was seen for oral surgery. The progress notes read that he was anxious for the procedure and requested sedation, and that he ambulated with a walker due to rheumatoid arthritis. (Tr. 917).

On February 1, 2023, neurologist Daniel Benson, M.D., evaluated Humenik. Dr. Benson observed that Humenik used a cane and had an antalgic gait. (Tr. 1152). A mini-mental status exam resulted in a score of 16 out of 30, with Humenik unable to spell words backward or recall basic objects. (Tr. 1151-52). Dr. Benson noted that prior neurological evaluations were

4

unremarkable and that Humenik's presentation suggested potential symptom embellishment. (Tr. 1153). Additional testing was recommended, with a follow-up scheduled in six months. (*Id.*).

Throughout 2022 and early 2023, Humenik received counseling at Ohio Guidestone. (Tr. 1080). His treatment included community psychiatric support and psycho-social rehabilitation. (*Id.*). Diagnoses of recurrent major depressive disorder and generalized anxiety disorder were maintained during these sessions. (Tr. 1080, 1086).

C.   **Medical Opinion Evidence**

On December 6, 2021, Dr. Kuentz completed a medical source statement, opining that Humenik could occasionally lift and carry five pounds, would be limited in standing and walking, with no further description as to how limited, would not be limited in sitting, could rarely climb, crouch, kneel, crawl, and could occasionally balance, stoop, reach, push, pull, and perform fine and gross manipulation. (Tr. 821-22). The opinion also stated that heights, moving machinery, temperature extremes and pulmonary irritants would affect Humenik's impairment, that he was prescribed a cane and breathing machine, and he experiences pain that interferes with concentration, takes him off track, and causes absenteeism. (*Id.*). Dr. Kuentz further opined that Humenik does not need to elevate his legs at will, but he does require additional unscheduled rest periods during an 8-hour workday, with no further description as to how long. (Tr. 822). The opinion concluded stating that Humenik was moderately limited in understanding, remembering, and applying information, and was limited in sustaining an ordinary routine and regular attendance, in working a full day without requiring extra or longer rest periods, in responding to demands, managing symptoms, and in making plans independently. (Tr. 823-24).

On December 18, 2021, James Bircher, D.O., conducted a consultative physical examination. (Tr. 827-32). Dr. Bircher noted normal memory and concentration during the

5

evaluation but observed an antalgic gait on the left with the use of a cane. (Tr. 829-30). Humenik was unable to heel-toe walk, and tandem walking was abnormal. (*Id.*). Apart from a limited left hip range of motion, strength and joint function were within normal limits. (Tr. 831, 833-34). Left hip range of motion was 70 degrees flexion, 15 degrees internal and external rotation. (Tr. 836). Dr. Bircher concluded that Humenik can sit, stand, and walk, with limitations due to pain and shortness of breath that may lead to difficulty in walking for 60 minutes. (Tr. 831).

On January 8, 2022, state agency reviewing physician Steve McKee, M.D., reviewed the record and concluded that Humenik could perform light work with postural and environmental limitations. (Tr. 183-84). Elizabeth Das, M.D., later concurred with this assessment. (Tr. 216-18).

On February 8, 2022, Humenik underwent a consultative psychological evaluation with Thomas Evans, Ph.D. (Tr. 839). Humenik demonstrated significant cognitive impairments, struggling with basic memory tasks, such as recalling words and naming presidents. (Tr. 841). His full-scale IQ score of 56 placed him in the extremely low range, with severe memory deficits noted. (Tr. 842-43). Dr. Evans assessed Humenik with intellectual disability and unspecified depressive disorder. (Tr. 842). Dr. Evans concluded that Humenik could manage only single-step tasks and simple instructions and would need assistance managing funds. (Tr. 843-44).

On April 14, 2022, state agency reviewing psychologist Joel Forgus, Ph.D., reviewed the record. (Tr. 185). While acknowledging a severe depressive disorder, Dr. Forgus found that Humenik could perform simple, repetitive tasks without strict production standards and adjust to occasional, gradually introduced changes. (Tr. 185-86). Dr. Forgus also opined that Humenik could focus for two hours with routine breaks and could maintain concentration with the ability to adjust to routine changes when introduced gradually over time. (Tr. 185). Dr. Forgus rejected

6

Dr. Evans's IQ findings from February 8, 2022, and concluded that Humenik's scores were consistent with malingering at previous testing and were inconsistent with Humenik's level of functioning and clinical presentations across settings. (Tr. 195).

On August 12, 2022, Dr. Kuentz provided another medical source statement. (Tr. 1055-56). He opined that Humenik could lift five pounds, stand or walk for no more than 30 minutes, and sit for up to four hours in an eight-hour workday due to his rheumatoid arthritis and back pain. (Tr. 1055). Dr. Kuentz opined that Humenik could rarely climb, balance, stoop, crouch, kneel, reach, push, pull, and perform fine or gross manipulation. (Tr. 1055-56). Dr. Kuentz confirmed that Humenik had been prescribed a cane and concluded the medical source statement by adding that Humenik's moderate pain and short-term memory deficits would interfere with work eight hours a day, five days a week. (Tr. 1056). At the same visit, Humenik reported that he relied on family for assistance with household chores, transportation, and finances. (Tr. 1057).

      **D.**    **Administrative Hearing Evidence**

On March 20, 2023, Humenik testified before the ALJ. (Tr. 43). The ALJ began by addressing Humenik's amended alleged onset date of January 31, 2018, which was confirmed with Humenik and his attorney. (Tr. 44-45).

During testimony, Humenik described how his cognitive issues, including severe short-term memory deficits, had worsened progressively over time. (Tr. 53-55). He reported experiencing blackouts at work and believed that somebody was sabotaging his work. (Tr. 53-54). Concerned that he would be fired, he voluntarily left the position in 2013. (*Id.*). He described frequent blackouts, sometimes waking up with unexplained bruises and scratches, which caused significant fear and confusion. (Tr. 55). He also noted that these blackouts had become more frequent, occurring daily. (Tr. 56).

7

Regarding his memory problems, Humenik explained that he relied heavily on his phone to remind him of tasks, medications, and appointments. (Tr. 56-57). He testified that his memory lapses included forgetting everyday activities, such as retrieving laundry from the dryer, which had remained untouched for three days because he forgot about it. (Tr. 56). He reported that, during conversations, he often lost track of what he was saying and appeared disoriented to others. (Tr. 57). Humenik further described relying on his phone to remember when to take his medications and testified that his uncle also helped him track appointments and daily tasks. (*Id.*). He stated that he lived with his grandmother but received ongoing support from his uncle. (*Id.*).

Humenik testified that pain affected his mobility and overall functioning. (Tr. 57-58). He described needing to lay down multiple times throughout the day to relieve his pain. (Tr. 58). He explained that he cannot walk long distances and halfway through a store trip, he often needed to stop due to breathlessness and pain. (Tr. 60). He could lift about 20 pounds but would be careful so as not to incapacitate himself. (Tr. 61).

Humenik further explained that his memory issues have been terrible on his life and have had a negative impact on his mental health. (Tr. 58-59). He often cannot sleep due to pain. (Tr. 59). His conditions have stopped him from driving as much. (Tr. 61-62). Simple physical tasks had become unmanageable. (*Id.*). For example, it can take two to three days for him to sweep the carpet and he cannot cut the grass anymore. (Tr. 62). He can shower, shave, and cook for himself but has issues with cleaning and doing the laundry. (*Id.*).

The VE then testified. The ALJ presented the following hypothetical: an individual who can lift and carry up to 10 pounds frequently and 20 pounds occasionally, can sit, stand, and walk for six hours each in an eight-hour workday, and is limited to occasional climbing of ramps and stairs but never climbing ladders, ropes, or scaffolds. This individual can frequently balance,

stoop, kneel, crouch, and crawl and should avoid concentrated exposure to extreme cold, heat, wetness, humidity, respiratory irritants, unprotected heights, and dangerous machinery. Mentally, the individual can understand, remember, and apply information to complete simple instructions and perform simple, repetitive tasks without strict production quotas, focusing on work tasks for two-hour periods with routine breaks. The hypothetical also included occasional changes in duties and occasional work-related interaction with the general public, coworkers, and supervisors. (Tr. 62-63).

The VE testified that the hypothetical individual would not be able to perform Humenik's past relevant work as an electromechanical technician. (Tr. 64). However, the VE identified other jobs in the national economy that such an individual could perform. These included Cleaner, Housekeeper, DOT 323.687-014, with approximately 178,000 jobs available; Merchandise Marker, DOT 209.587-034, with approximately 137,000 jobs; and Cashier, DOT 211.462-010, with approximately 465,000 jobs. (*Id.*).

The ALJ asked whether off-task behavior would impact competitive employment. The VE testified that off-task behavior exceeding 15 percent of the workday would not be tolerated. (Tr. 65). Additionally, the VE noted that needing at least one or two reminders a day is not consistent with competitive group work and that most employers would tolerate about one or two absences per month, but no more than six to eight times per year. (*Id.*).

## IV. The ALJ's Decision

In her decision dated March 30, 2023, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since January 31, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

9

3. The claimant has the following severe impairments: obesity, mild obstructive ventilatory defect, tobacco use disorder, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: He can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. He can stand or walk for 6 hours of an 8-hour workday. He can sit for 6 hours of an 8-hour workday. He can never climb ladders, ropes, or scaffolds. He can occasionally climb stairs and ramps. He can frequently balance, stoop, kneel, crouch, and crawl. He must avoid jobs that expose the claimant to more than 66% of the time to extreme cold, heat, wetness, humidity, respiratory irritants and all jobs that require working in unprotected heights, operating dangerous moving machinery such as power saws and jack hammers or commercial driving. He can understand, remember, and apply information to complete simple instructions. He is able to perform simple repetitive tasks without strict production standards. He can focus on work tasks for 2-hour periods with routine breaks and he can maintain concentration, persistence, or pace throughout a regular workweek. He can adapt to work tasks that involve up to occasional changes in duties.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 26, 1972 and was 45 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2018, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-35).

## V. Law & Analysis

### A. Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1. whether the claimant is engaged in substantial gainful activity;

2. if not, whether the claimant has a severe impairment or combination of impairments;

3. if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4. if not, whether the claimant can perform their past relevant work in light of his RFC; and

5. if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[2]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

---

[2] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

B. **Standard of Review**

This Court reviews the Commissioner's final decision to determine if it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review

12

decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 538120, *6 (E.D. Mich. Nov. 1, 2012).

## VI. Discussion

Humenik brings two issues for this Court's review:

1. Whether the ALJ's failure to evaluate Mr. Humenik's need for a cane resulted in a flawed residual functional capacity assessment and constitutes reversible legal error.
2. Whether the ALJ's mental residual functional capacity assessment erroneously excluded limitations caused by Mr. Humenik's memory deficits.

(ECF Doc. 8, p. 1).

### A.  The ALJ's failure to provide adequate reasoning under SSR 96-9p regarding Humenik's cane usage warrants remand.

Humenik first argues the ALJ erred by not directly addressing his use of a cane and its impact on his residual functional capacity. (*Id.* at p. 12). He asserts that his cane is medically required, citing to multiple instances within the medical record that shows such, and that it should have been included in the ALJ's residual functional capacity finding. (*Id.* at pp. 12-13). He argues that the ALJ omitted substantial evidence regarding his need for a cane and provided no indication of applying the factors set forth in SSR 96-9p regarding his need for a cane. (*Id.*).

The Commissioner responds by asserting two reasons for which Humenik's argument is flawed. First, the Commissioner argues that the ALJ clearly considered Humenik's cane use at several points and explained why she was not including further limitations in the RFC finding by

13

stating: "The medical evidence of record shows can[e] usage with current antalgic gut [sic], but he has full strength and, other than hip, full range of motion." (ECF Doc. 10, pp. 6-7, quoting Tr. 33). Second, the Commissioner asserts that Humenik, not the ALJ, has the burden of proof with respect to the RFC. (*Id.* at p. 8). The Commissioner argues that Humenik has not met his burden in proving the need for a cane because, pursuant to SSR 96-9p, although Humenik did have a prescription for the cane, he did not have one describing the circumstances for which the cane is needed. (*Id.*).

> SSR 96-9p states, in relevant part:
>
> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996).

When determining an RFC, "the ALJ must give some indication of the evidence upon which [she] is relying, and [she] may not ignore evidence that does not support [her] decision, especially when that evidence, if accepted, would change [her] analysis." *Fleischer*, 774 F.Supp.2d at 880 citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x. 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before [her] when [she] 'mak[es] a residual functional capacity determination,' and must also 'mention or refute . . . contradictory, objective medical evidence' presented to [her].")). *See also* SSR 96-8p, at *7, 1996 SSR LEXIS 5, *20 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Although the ALJ determines the RFC, the claimant bears

14

the burden of proving the impairments that support it. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

Here, the ALJ acknowledged Humenik's cane usage in multiple references throughout her decision. (*See* Tr. 26 ("He uses a cane."); *id.* at 29 ("He had an antalgic gait with cane."); *id.* ("He has been prescribed a cane and breathing machine."); *id.* at 30 ("He had an antalgic gait on the left and he used a cane."); *id.* ("He uses a cane to ambulate."); *id.* at 31 ("He walked with the assistance of a cane.")). However, these references merely indicate the presence of cane usage in the record and do not explain why the ALJ excluded the cane from the RFC analysis under SSR 96-9p.

The ALJ also discussed the two medical source opinions by Dr. Kuentz that referenced Humenik's cane prescription, but inadequately explained why she was not including Humenik's cane use in the RFC. In addressing Dr. Kuentz's December 6, 2021 medical source opinion, the ALJ omitted any discussion of the cane prescription. (*Compare* Tr. 30 *with* Tr. 821-22). Regarding Dr. Kuentz's August 12, 2022 opinion, the ALJ stated:

> He has been prescribed a cane. He does not need to alternate positions. He has moderate pain that interferes with concentration, takes him off-task, and causes absenteeism. He does not need to elevate his legs. He requires additional unscheduled breaks. The undersigned finds this opinion unpersuasive because it [is] based on the claimant's subjective complaints rather than on objective findings. The current consultative examination shows full strength and full range of motion in all extremities (Exhibit B5F). While the claimant's conditions may limit him, the evidence does not support the degree of limitations as opined.

(Tr. 31-32).

Although the ALJ acknowledged the cane prescription, she did not explain why Humenik's cane usage specifically was excluded from the RFC nor did she address the SSR 96-9p factors. Multiple medical source opinions reveal Humenik's reliance on a cane. (*See, e.g.,* Tr. 443-44, 450-52, 456-58). Courts throughout this Circuit have upheld ALJ decisions that did not

15

include the need for a cane in a claimant's RFC did so after finding the ALJ provided an adequate SSR 96-9p analysis in explaining why cane usage was being excluded. *See, e.g.*, *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *19 (N.D. Ohio Dec. 12, 2018) (finding the ALJ did not err in not including a limitation for a cane because the ALJ's decision discussed why the claimant did not fulfil the requirements under SSR 96-9p); *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-cv-876, 2019 WL 1146356, *12 (S.D. Ohio Mar. 13, 2019) (finding the ALJ did not err in not including a limitation for a cane because the decision adequately described that there were "intermittent references to the claimant using a cane" but "nothing to explain the circumstances in which he used it."); *Salem v. Colvin*, No. 14-CV-11616, 2015 WL 12732456, *4 (E.D. Mich. Aug. 3, 2015) (finding the ALJ did not err by excluding a limitation for a cane, despite the claimant having a prescription, because the ALJ considered SSR 96-9p and noted that neither the prescription nor treatment records "indicate[d] the circumstances in which [the claimant] might require the use of a cane.").

Here, the ALJ made no reference to SSR 96-9p or include its analysis when excluding Humenik's cane usage from the RFC. Accordingly, I remand this issue to the ALJ for reconsideration of the medical evidence regarding Humenik's cane usage under SSR 96-9p.

### B. The ALJ did not erroneously exclude limitations caused by Humenik's memory deficits from the RFC.

Humenik argues that the ALJ's RFC assessment lacks substantial evidence because it failed to account for limitations caused by Humenik's alleged severe memory deficits. (ECF Doc. 8, p. 14). Specifically, he claims that the ALJ disregarded physician comments about his memory issues and omitted to include such limitations in the RFC. (*Id.* at 14). For example, the ALJ did not find the opinion of Dr. Evans, an evaluating psychologist for Social Security, to be

16

fully persuasive and did not consider the doctors' findings about Humenik's memory deficit. (*Id.* at 14-15).

The Commissioner, by contrast, responds with two arguments. First, the Commissioner asserts that the ALJ appropriately limited the RFC to symptoms and impairments deemed medically determinable and severe. (ECF Doc. 10, pp. 9-10). The ALJ concluded at Step Two that Humenik did not have a medically determinable memory impairment. (*Id.*) Second, the Commissioner maintains that even if Humenik's memory deficits were considered a medically determinable impairment, the ALJ reasonably evaluated their functional impact. (*Id.* at pp. 10-11).

"At Step Two of the sequential analysis, claimant has the burden of proving he has a severe medically determinable impairment, in order to establish disability within the meaning of the Act." *Dowey v. Comm'r of Soc. Sec.*, No. 5:17CV2489, 2018 WL 7681369, at *3 (N.D. Ohio Dec. 21, 2018) (citations omitted), *report and recommendation adopted sub nom*. *Dowey v. Berryhill*, No. 5:17CV2489, 2019 WL 580570 (N.D. Ohio Feb. 12, 2019); *Higgs v. Secretary*, 880 F.2d 860, 862-63 (6th Cir. 1988). The impairments "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. And thus, the "impairment[s] must be established by objective medical evidence from an acceptable medical source." *Id*. ALJs "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of . . . impairment(s)." 20 C.F.R. § 404.1521. The ALJ may terminate her disability evaluation at Step Two if the claimant does not meet his burden of proving an impairment or if the ALJ finds the claimant's impairment is not severe. *Dowey*, 2018 WL 7681369, at *3.

17

In the present case, the ALJ found that the medical evidence did not establish "extreme" limitations in any of the four areas of mental functioning required for Step Two analysis: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 23). Instead, the ALJ determined that Humenik exhibited mild limitations in interacting with others and moderate limitations in the remaining areas. (Tr. 23-24). In explaining her decision, the ALJ wrote, in part:

> [Humenik] also stated that he could prepare meals, pay bills, shop, and drive. In addition, the record shows that the claimant was able to provide information about his health, describe his prior work history, respond to questions from medical providers, and there is [sic] any mention of any issues with the claimant's short- or long-term memory… Additionally, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention… [Humenik] also stated that he is able to handle self-care and personal hygiene and help care for his grandmother.

(*Id.*).

Based on these findings, the ALJ concluded,

Because the claimant's mental impairments do not cause at least one "extreme" limitation or two "marked" limitations, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. There is no objective evidence or even subjective reports of exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning. There is no evidence of an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation. There is no record of a significant alteration in medication or documentation of the need for a more structured psychological support system.

Finally, the undersigned notes that no State agency psychological consultant concluded that a mental listing is medically equaled.

(Tr. 24).

I find that the ALJ's discussion is well-supported by substantial evidence and that she did not err by excluding Humenik's memory deficits in the RFC. The ALJ sufficiently explained why she did not find Humenik's memory impairment to constitute an "extreme" limitation at Step Two and further addressed why she found relevant medical evidence unpersuasive in her RFC analysis.

Dr. Kuentz's December 6, 2021, medical source statement indicated that Humenik exhibited moderate to marked limitations in understanding, remembering, and applying information, as well as in maintaining concentration. (Tr. 821-22). However, the ALJ found this opinion unpersuasive because it lacked a diagnosis or objective tests to substantiate such extreme limitations and it relied heavily on subjective reports rather than objective findings. (Tr. 30). Similarly, Dr. Evans's February 8, 2022, consultative psychological examination diagnosed Humenik with unspecified intellectual disability and suggested that he should be limited to simple, routine tasks. (Tr. 839-44). The ALJ found this opinion only partially persuasive, explaining that Dr. Evans's use of vague and imprecise terminology undermined the opinion's reliability. (Tr. 31). Additionally, the ALJ concurred with State agency consultant Joel Fargus, who concluded that Humenik was malingering. (Tr. 31). Accordingly, the ALJ determined that the medical evidence of record did not meet paragraph B or C criteria for establishing a severe mental impairment. (Tr. 24).

Humenik has not met his burden to establish error in the ALJ's decision. While he points to subjective statements in the record regarding his memory, such evidence was considered and reasonably weighed by the ALJ. The ALJ provided a detailed explanation of why such evidence and the associated medical opinions were unpersuasive. I find no error and decline to remand on this basis.

19

## VII. Conclusion

Because the ALJ failed to apply proper legal standards, I remand for the ALJ to consider SSR 96-9p regarding Humenik's cane usage and affirm the Commissioner's finding regarding Humenik's memory deficits.

Dated: November 26, 2024

Reuben J. Sheperd
United States Magistrate Judge